GEORGE SCULTHORPE, RESPONDENT, v. COMMONWEALTH CASUALTY COMPANY, APPELLANT.

Submitted March 26, 1923—Decided June 18, 1923.

1. Liability under a jitney bus insurance policy under the Kates act was made conditional upon use of the jitney bus in question for "passenger service." The schedule of statements, automatically warranted to be true according to the terms of the policy, contained the clause "the automobiles are maintained and principally used in the town of Newark, except as follows: Asbury Park, N. J." The answer to a suit on the bond set up as a defense the fact that the accident in question occurred while the jitney bus was in passenger service about three miles from Asbury Park on the road to Freehold, which is eighteen miles distant. *Held*, that the answer was properly stricken out.

2. In the Practice act (1912), the word "frivolous," as applied to a defense, is used in the sense of "legally insufficient" without any imputation of insincerity or bad faith on the part of the pleader.

3. The fact that an answer was stricken out as "sham," when it should have been stricken out as "frivolous," is not cause for reversal.

---

On appeal from the Essex County Circuit Court.

For the appellant, *Jacob Schneider.*

For the respondent, *Seymour & Smith.*

The opinion of the court was delivered by

WHITE, J. This is an appeal from a judgment of the Essex County Circuit Court striking out as sham the answer

filed by the defendant. The suit was upon a jitney bus insurance policy, issued under and in pursuance of an act entitled "An act concerning auto buses, commonly called jitneys, and their operation in cities" (*Pamph. L.* 1916, *p.* 283), and was to recover against the defendant insurance company a portion (corresponding to the amount of the policy) of a final judgment recovered by the plaintiff against the jitney bus owner and operator in the Monmouth County Circuit Court. The insurance policy was incorporated in the complaint filed in the action, and by stipulation was made a part of the record. It undertakes in consideration of the premium and of the statements set forth in an attached schedule (which statements, according to the terms of the policy, the insured, by accepting the policy, warranted to be true), to indemnify against loss from the liability imposed by law upon the assured, &c., &c., but expressly provided as follows: *"Exclusions*—This policy does not cover loss arising from claims made on account of accidents resulting from the use of the automobile or automobiles covered hereby: (*a*) While used for any other purpose than that stated in item V. of the attached schedule;" (*b*) while racing; (*c*) while driven by any person under sixteen years of age, and (*d*) while used or maintained at a time not within the policy period. The item V. above referred to provides: *"Item V.* The purposes for which the automobiles are to be used and will continue to be used during the period of this policy are *passenger service."*

The schedule of statements also contains the following: *"Item - VIII.* The automobiles are maintained and principally used in the town named in Item II (which is Newark) except as follows: Asbury Park, N. J."

The answer set up as a defense that the accident occurred while the jitney bus in question was operating in passenger service at a point on the public highway about three miles outside of the limits of Asbury Park on the road to Freehold, which is about eighteen miles therefrom, all in the State of New Jersey; and further, that a greater premium than was charged would have been charged for the policy if

it had been intended to cover both the cities of Asbury Park and Freehold.

We think this answer was properly stricken out. It nowhere avers that the statement that the "automobiles are maintained and principally used in Newark and Asbury Park" was in fact untrue, and we are not, therefore, called upon to construe the meaning of the word "principally" as used in this statement. There is no express limitation in the policy to a definitely described route as there was in that involved in the case of *Connell v. Commonwealth Casualty Co.,* 96 *N. J. L.* 510, where we were required to construe the words "and vicinity." All that this policy contains on the subject is a warranty of the truth of the statement that the automobiles covered thereby are principally used in Newark and Asbury Park and the answer does not challenge the truth of this statement.

The only other clause in the policy which could possibly have any bearing upon the defendant's liability in this case is the "Exclusion" clause above quoted, which does expressly limit the liability under the policy to automobiles while used in "passenger service;" but the answer admits that at the time the accident in question occurred this jitney bus was in fact being used in passenger service by its owner and operator.

Under all these circumstances and in view of the definite language of the policy it is quite immaterial what other or different premiums the defendant company would have charged for the policy if the statement as to where the bus was principally used had expressly covered a larger territory.

For these reasons we think that the answer was properly stricken out; but we also think that it should have been stricken out as "frivolous" instead of as "sham." As was pointed out by Chancellor Walker, sitting as Ordinary in the Prerogative Court in *In re Beam*, 93 *N. J. Eq.* 593, quoting from 31 *Cyc.* 316: "While the courts sometimes use the terms 'frivolous' and 'sham' as meaning the same thing, and a motion to strike is often based on the ground that a plea

is both frivolous and sham, there is nevertheless a clear distinction between the two, in that a sham plea is good on its face, but false in fact, while a frivolous plea is one which on its face sets up no defense, although it may be true." A frivolous pleading is always assumed to be true, while a sham pleading must be admitted or conclusively proved to be false; the character of the former is determined by mere inspection, while that of the latter is usually determined by proof *aliunde.* "So also Mr. Justice Minturn, speaking for this court in *Fidelity Mutual Life Insurance Co.* v. *Wilkesbarre and Hazelton Railroad Co., ante p.* 507, called attention to the same distinction, and after pointing out the fraudulent nature of a "sham" plea at common law, in that "it was palpably or inherently false and from the plain or conceded facts in the case must have been known to the party interposing it to be false," stated as to a "frivolous" plea at common law, quoting from 2 *Bouv.* 853, that it "need not be false, but is palpably insufficient as a legal defense to the action and hence legally unsubstantial or frivolous and therefore presumably interposed for the purposes of delay."

The Practice act (1912), which says, "Subject to rules, any frivolous or sham defense to the whole or any part of the complaint may be struck out," providing, as we think it intends to, a summary method of striking out a legally insufficient defense without resort in substance to the common law demurrer with its incidental delays, has, it seems to us, used the word "frivolous" in the sense of "legally insufficient," without there being necessarily incident to its use the suggestion of insincerity, which (as is indicated in the quotation from Bouvier above cited) attached to the use of the term at common law. Rule No. 40 of Supreme Court is in conformity with this view.

The fact that the answer was stricken out as "sham" and not, as it should have been, as "frivolous," is not cause for reversal. *McCarty* v. *West Hoboken,* 93 *N. J. L.* 247, and numerous cases there cited.

For the foregoing reasons the judgment is affirmed.

*For reversal*—None.